UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JUAN M. RUELAS, an individual,

Plaintiff,

v.

FREIGHTLINER, LLC, a Delaware Limited Liability Company; FRESNO TRUCK CENTER dba SACRAMENTO TRUCK CENTER, a California Corporation,

Defendants.
____________________________/

NO. CIV. S-07-581 LKK/DAD

O R D E R

Plaintiff, Juan M. Ruelas, has brought suit against defendants, Freightliner LLC (manufacturer) and Fresno Truck Center d/b/a/ Sacramento Truck Center (retailer), for alleged breaches of warranty of his tractor trailer under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12, and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 et seq, and related state claims. Pending before the court is defendants' motion for summary judgment, which argues that the plaintiff's tractor trailer is not

covered by either federal or state warranty acts. The court resolves the motion on the parties' papers and after oral argument. For the reasons explained below, the motion for summary judgment is granted.

## I. Facts[1]

Plaintiff, Juan M. Ruelas, purchased a 2005 Freightliner Classic XL Tractor, VIN 1FUJAPCK45DN58143 from defendant, Fresno Truck Center d/b/a/ Sacramento Truck Center, on March 24, 2006. Defendant's Separate Statement of Undisputed Facts ("SUF") ¶ 1. Plaintiff initiated the purchase and acted as a "strawman" in order to get the proper financing for the vehicle on behalf of his brother-in-law, George Cruz. SUF ¶ 12. At the time of purchase, Mr. Cruz told the salesman that he needed a truck "to haul heavy equipment" and selected a commercial vehicle with a gross vehicle weight rating of 52,000 pounds (a shipping weight of 17,341 pounds and an unladen weight of 17,000 pounds). SUF ¶¶ 14, 4.

Defendants assert that at the time of the purchase, plaintiff executed a number of documents, including a Vehicle Buyers Order, a Retail Installment Contract-Security Agreement, and a Request for Tax Waiver.[2] SUF ¶ 5. Defendants argue that

[1] The facts set forth in this section are undisputed unless otherwise noted. Each party objects to various pieces of evidence that the opposing party has presented. Some of the evidence to which the parties object is irrelevant to the court's analysis of the summary judgment motion. To the extent that the evidence is relevant, the objections are OVERRULED.

[2] Plaintiff disputes the truth of the terms of these documents, especially the terms stating Plaintiff would take delivery of

the terms of these documents forbid the purchaser from using the property for personal purposes and allowed purchaser to avoid paying a Federal Excise Tax or California State Sales Tax on the Vehicle due to its delivery in Verdi, Nevada. SUF ¶¶ 8, 11. Defendants maintain the Vehicle was delivered to plaintiff in Verdi, Nevada on March 24, 2006. SUF ¶ 10. Plaintiff asserts he was told to sign such documents in order to avoid sales tax on the purchase and that he actually took delivery and possession of the vehicle in Sacramento, California at the Sacramento Truck Center Dealership. SS ¶¶ 5, 10.

George Cruz, on whose behalf the plaintiff purchased the vehicle, intended to use the vehicle for commercial trucking and intended to start his own trucking business. SS ¶ 15; see also Declaration of George Cruz In Support of Plaintiff Juan Ruelas' Opposition to Motion for Summary Judgment ("Cruz Decl.") ¶¶ 2, 9. After purchase, he used the vehicle to haul loads. Id. ¶ 9. He drove the vehicle "around the country," hauling loads, approximately 95-97 percent of the time that he used the vehicle. Id. His wife occasionally accompanied him and, when she did, they slept in the vehicle and kept personal belongings in it. Id. They also used it to visit friends and family. Id.

Following possession and use of the truck, plaintiff alleges he discovered nonconformities in the vehicle and that

---

the truck in Verdi, Nevada and that Plaintiff was not going to use the tractor trailer for personal purposes. See Plaintiff's Separate Statement In Opposition to the Defendants' Statement of Undisputed Material Facts ("SS") ¶ 5.

defendants failed to conform the vehicle to applicable warranties. SUF ¶ 16.

On January 25, 2007, plaintiff filed his complaint in Sacramento Superior Court against defendants. SUF ¶ 17. Plaintiff alleged breach of express and implied warranty under both the Magnuson-Moss Warranty Act and the Song-Beverly Warranty Act. SUF ¶ 17. On March 23, 2007, defendants removed the case to this court.

## II. Standard for Summary Judgment Under Federal Rule of Civil Procedure 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Sicor Limited v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Sicor Limited, 51 F.3d at 853.

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954

(9th Cir. 1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see also Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); see also International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093 (9th Cir. 1999). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**III. Analysis**

Defendants move for summary judgment on the grounds that the protections of the Magnuson-Moss Warranty Act or the California Song-Beverly Consumer Warranty Act do not apply to plaintiff’s tractor trailer. Despite drawing all reasonable

inferences from the facts before the court in favor of plaintiff, for reasons stated below, the court grants the motion for summary judgment.

**A. Magnuson-Moss Warranty Act Claims**

The plaintiff's complaint alleges that the defendants breached a written warranty and breached an implied warranty, in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12. The defendants assert that the Act does not apply to plaintiff's vehicle and therefore that the plaintiff's claims under the Act are barred. As explained below, the court agrees and grants the defendants' motion on these claims.

The Magnuson-Moss Warranty Act establishes minimum standards for express and implied warranties for goods and offers consumers remedies when the warranties are found to be inadequate. 15 U.S.C. §§ 2304-2310. The Act applies only to warranties that pertain to consumer products. Id. § 2302(e). A "consumer product" is "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes...." Id. § 2301(1); see also 16 C.F.R. § 700.1(a) (defining "consumer product" similarly). Neither the percentage of sales nor the use to which a product is put by any individual buyer is determinative. 16 C.F.R. § 700.1(a). If it is unclear whether a particular product is covered by the Act, courts should resolve the ambiguity in favor of coverage. Id.

Although there appears to be no Ninth Circuit case on the issue, both the plain language of the statute and other courts' holdings indicate that the "normal" use of a vehicle is determined by considering the specific class to which the vehicle belongs, rather than the plaintiff's use of his particular vehicle. See, e.g., Waypoint Aviation Services Inc. v. Sandel Avionics, Inc., 469 F.3d 1071 (7th Cir. 2006); Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1032 (D. Haw. 2006); Najran Co. for Gen. Contracting & Trading v. Fleetwood Enter., Inc., 659 F. Supp. 1081, 1099 (N.D. Ga. 1986); Walsh v. Ford Motor Credit Co., 449 N.Y.S.2d 556 (N.Y. Sup. Ct. 1982).

In Waypoint, the Seventh Circuit examined whether classification of an airplane as a non-consumer product was appropriate even if its principal use was for personal purposes. Waypoint, 469 F.3d at 1072. The court concluded that the plane could be a consumer product based on the normal use of the type of airplane found across its particular sub-class. Id. at 1073. The court explained that analysis of whether an item is a "consumer product" should be done within these particular subcategories instead of across broad classes. Id. Particularly, the court said that categories such as "airplanes" and "motor vehicles" are too broad, but that the analysis should be done in a more "fine-grained" manner over individual subcategories. Id. The court opined that within the category of motor vehicles, "locomotives, military tanks, *commercial*

*tractor-trailer rigs*...are not consumer products." Id. (italics added); see also Walsh, 449 N.Y.S.2d at 557 (holding that a tractor trailer was not a consumer product under the Act). Despite the plaintiff's argument to the contrary, Waypoint does not support the proposition that the court should inquire into the plaintiff's use of his particular vehicle to determine whether it is properly covered by the Act. Rather, the court must consider whether the subclass of vehicles to which the plaintiff's vehicle belongs is normally used as a consumer product.

In determining the "normal" use for a class of products, courts often turn to a common sense understanding of the product. See Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 998 (D. Minn. 2006) (concluding that SAT preparation materials did not appear to resemble the consumer products listed in the Federal Register or the legislative history of the Act); Clark v. Jim Walter Homes, Inc., 719 F. Supp. 1037, 1043 (M.D. Ala. 1989) (adopting a similar approach to conclude that a prefabricated home resembles real property for the purposes of the Act and therefore is not a "consumer good"). Courts also consider the manufacturer's description of the product and how it is advertised, as well the purpose for which it was designed. See, e.g., People ex rel. Mota v. Central Sprinkler Corp., 174 F. Supp. 2d 824, 829-30 (C.D. Ill. 2001); Essex Ins. Co. v. Blount, Inc., 72 F. Supp. 2d 722, 723 (E.D. Tex. 1999).

The plaintiff argues that the court should consider the purchaser's actual use of the product as evidence of normal use, citing to Balser v. Cessna Aircraft Co., 512 F. Supp. 1217 (N.D. Ga. 1981). The plaintiff in Balser brought claims under the Magnuson-Moss Warranty Act for an airplane he bought. Id. at 1217. The court held that the purchaser's actual use of his individual product was the "determining factor" of whether a product was a consumer product. Id. at 1219. This holding, however, appears inconsistent with other courts' interpretations of the statute and the plain language of the statute itself, as discussed above. This is particularly relevant because the Balser court itself cautioned that there was "no controlling authority and little persuasive authority to guide it" in arriving at its holding. See id. Moreover, the Federal Regulations interpret the Act to refer to the use of a "type of product," indicating that the court's inquiry should not be focused on an individual plaintiff's personal use of his product. 16 C.F.R. § 700.1(a). To the extent that Balser's holding contradicts this approach, the court declines to follow it.

Because the Act only applies to consumer products, a component of the plaintiff's claims is that his vehicle is a consumer product under the Act; this is an element for which he bears the burden of proof at trial. See 15 U.S.C. §§ 2301-2302. Therefore, the defendants' motion must succeed if a reasonable

jury could not conclude based on the evidence before it that the plaintiff has borne his burden on this issue.

The plaintiff has presented two types of evidence to support his allegation that his vehicle is a consumer product. First, he presents evidence of recreational use of tractor trailers by some collectors and enthusiasts. See Declaration of Jessica D. Lew In Opposition to Defendants' Motion ("Lew Decl.") ¶¶ 2-3, Exh. B-C. Second, he presents evidence that Mr. Cruz slept in the vehicle and kept his personal belongings in it, and that he used it to visit friends and family. See Cruz Decl. ¶ 9. Based on the evidence before the court, no reasonable jury could conclude that the plaintiff has borne his burden to prove that the vehicle was a commercial vehicle. First, his evidence of Mr. Cruz's personal use of the vehicle is immaterial, as the court's inquiry must focus on the normal use for the class of tractor trailers, as explained above. Even if Mr. Cruz's personal use of the vehicle were relevant, the evidence before the court hardly supports the plaintiff's position, as it appears clear from Mr. Cruz's statements that his and his wife's personal use of the vehicle was incidental to his use of it for commercial purposes. See Cruz Decl. ¶ 9; Declaration of Joseph Whitecavage in Support of Defendants' Motion for Summary Judgment ("Whitecavage Decl.") ¶ 2, Exh. A (deposition of Mr. Cruz, in which he stated that he intended to use the vehicle for commercial purposes and that use never changed).

What remains, then, are two newspaper articles which depict individuals' hobbies of restoring, collecting, and showing tractor trailers. See Lew Decl. ¶¶ 2-3, Exh. B-C. This evidence, again, hardly supports the plaintiff's position, as the articles describe the vehicles being used for commercial purposes primarily. See id. ¶ 2, Exh. B.

The defendant has presented evidence from John Michel, a salesperson and Sales Manager of Freightliner tractor trailers, that these vehicles are normally purchased and used for commercial hauling. See Declaration of John Michel In Support of Defendants' Motion for Summary Judgment ("Michel Decl.") ¶¶ 10-11. The court also notes that the only courts that appear to have considered the question of whether a tractor trailer is a consumer product under the Act have concluded that it is not. See Waypoint, 469 F.3d at 1072; Walsh, 449 N.Y.S.2d at 557.

Considering the plaintiff's evidence in light of the defendants' contrary evidence but drawing every inference in favor of the plaintiff, the court must conclude that no reasonable jury could find that the plaintiff has shown that his vehicle was a "consumer product" under the Act. The court thus will grant the defendants' motion as to these claims, which are counts three and four of the plaintiff's complaint.

**B. The Court's Jurisdiction Over Pendant State Claims**

What remains are plaintiff's claims under the state statute and alleged violations of the California Commercial Code. In his opposition, the plaintiff argues that even if summary judgment

is granted on his four causes of action, the complaint should not be dismissed because the court may retain jurisdiction over these claims.

It is true that the court could retain jurisdiction over the plaintiff's remaining state law claims. The exercise of supplemental jurisdiction is usually mandatory, unless it is prohibited by 28 U.S.C. § 1367(b) or falls under one of the exceptions set forth in 28 U.S.C. § 1367(c). Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal., 24 F.3d 1545, 1555-56 (9th Cir. 1994). Under section 28 U.S.C. 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Id. (citing 28 U.S.C. § 1367). In deciding whether to exercise supplemental jurisdiction, "the ultimate inquiry for the courts [is] whether the assertion of pendent jurisdiction 'best accomodate[s] the values of economy[,] convenience, fairness and comity.'" Executive Software, 24 F.3d at 1556. Generally, when a case was removed, it is preferable to remand the case to state court rather than dismiss the plaintiff's claims, in order to minimize possible unfairness to the plaintiff. See Carenegie-

Mellon University v. Cohill, 484 U.S. 343, 352 (1988); cf. Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1167 n. 3 (9th Cir. 2002).

Here, given that the court grants defendants' motion on the claim over which the court has original jurisdiction, the Executive Software facts weigh strongly in favor of the court not exercising jurisdiction over the case. See also 28 U.S.C. § 1367. Although no party has presented evidence of the possible injury to the plaintiff of dismissing the case rather than remanding it to state court, the most prudent disposition is remand.

**IV. Conclusion**

For the reasons explained above, defendants' motion for summary judgment with respect to all the plaintiff's claim under the federal statute is GRANTED.

This action is REMANDED to state court.

The Clerk is directed to close the case.

IT IS SO ORDERED.

DATED: February 27, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT